STATE V. R. J. RAYBURN.

No. 209.    Opinion Filed May 25, 1909.

(101 Pac. 1029.)

1.    HIGHWAYS—Failure to Work—Time of Filing Complaint. The provision of section 6109 of Wilson's Revised and Annotated Statutes of 1903 of this state, providing that it shall be the duty of the road overseer to file a complaint as therein provided against a person violating the provisions of section 6090, is directory only.

2.    SAME—Work on Road by Taxpayers—"Poll Taxes." The statute imposing compulsory labor upon persons residing in the several road districts of this state for the purpose of keeping the highways in repair, with the privilege of providing a substitute, or the payment of a stipulated sum in lieu of such personal services, is not a levying of taxes by the poll within the meaning of section 284, Bunn's Constitution of Oklahoma.

3.    SAME. Section 6090, which provides that all male persons between 21 and 50 years of age, who have resided 30 days in this (state) territory, who are capable of performing labor on public highways, and who are not a township or county charge, shall be

liable each year to perform four days' work of eight hours each on the public roads under the direction of a road overseer within whose district or ward they may reside, or furnish a substitute to do the same, or pay the sum of $1.00 per day to the road supervisor, etc., is in full force in this state, notwithstanding section 284 of Bunn's Oklahoma Constitution, which reads: "The Legislature may authorize the levy and collection of a poll tax on all electors of this state, under sixty years of age, not exceeding two dollars per capita, per annum, and may provide a penalty for the non-payment thereof."

(Syllabus by the Court.)

*Error from Ellis County Court; A. E. Williams, Judge.*

R. J. Rayburn was arrested upon a complaint filed in the county court charging him with wilfully failing or refusing to perform road work as required by Wilson's Rev. & Ann. St. Okla. 1903, § 6090. The complaint was dismissed on motion of accused, and the state brought error to the Supreme Court, whence the cause is transferred to the Criminal Court of Appeals. Reversed.

On March 10, 1908, complaint was filed in the county court of Ellis county against the defendant in error, who will hereinafter be referred to as "the accused," charging him with wilfully failing or refusing to comply with section 6109, Wilson's Rev. & Ann. St. 1903, which reads as follows:

"Any person liable to perform road work as required in this act who having been duly notified to perform such work or furnish a substitute therefor as required in this act, shall be deemed guilty of a misdemeanor and punished by confinement in the county jail for a period of ten days, or by a fine of not less than ten dollars nor more than twenty-five dollars, or by both such fine and imprisonment: Provided, that it shall be the duty of the road overseer to file a complaint before some justice of the peace of his township against such person so refusing or failing to comply with such notice within ten days after such failure or refusal. And any road overseer failing to file such complaint shall be guilty of a misdemeanor and punished as in this section provided for the person so refusing.     *     *     *"

That on the 21st day of February, 1908, accused was a citizen and taxpayer of road district No. 2, in Ellis county, in this state,

and that he was a person liable to perform work under the laws of the state of Oklahoma. That he was duly and lawfully notified as required by law, on the 21st day of February, 1908, to appear and commence the performance of such road work upon the roads in said district on the 25th day of February, 1908. That the accused wilfully failed and refused to comply with said notice, by performing such work or furnishing a substitute therefor, and refused to pay in lieu of such work the sum of $1 per day, as provided by section 6090, Wilson's Rev. & Ann. St. 1903.

The accused was arrested upon said complaint, and, appearing in said court, filed the following motion:

"Comes now R. J. Rayburn by his attorney, S. A. Miller, and moves the court to dismiss his cause, and says: That said complaint was not filed within the 10 days' statutory limit, as provided by the statute and laws of the state of Oklahoma."

This motion was sustained, and the accused was discharged, to which ruling the state duly saved an exception. The county attorney of said county, in behalf of the state, filed a motion for a new trial, setting forth in substance: That the court erred in sustaining the motion of the accused to dismiss; that the court erred in holding that the provisions of section 6109, Wilson's Rev. & Ann. St., are words of limitation upon the right of the state to prosecute the accused for the crime set forth in the complaint; and that the court also erred in not holding that the statute of limitation applying to misdemeanors generally, which fixes the period of limitation at three years after the commission of the offense in which prosecution shall be commenced, applied to the case at bar. From the judgment of the county court discharging the accused, the state prosecutes error.

The appeal in this case was originally filed in the Supreme Court of this state, and was, upon the creation of the Criminal Court of Appeals, duly transferred to, and is now properly pending in, this court.

*C. B. Leedy,* County Atty., and *W. C. Reeves,* Asst. Atty. Gen., for the State.—Cooley on Constitutional Limitations, pp.

109-119; *Hassett v. Walls,* 9 Nev. 387; *Short v. State,* 80 Md. 392; *Leedy v. Bourbon,* 12 Ind. App. 486; *Furboll v. Meisner,* 20 Minn. 396.

BAKER, JUDGE. (after stating the facts as above). Section 6090, Wilson's Rev. & Ann. St. 1903, reads as follows:

"All male persons between twenty-one and fifty years of age, who have resided thirty days in this territory, who are capable of performing labor on public highways, and who are not a township or county charge, shall be liable each year to perform four days work of eight hours each on the public roads, under the direction of the road overseer within whose district or ward they may respectively reside, or furnish a substitute to do the same, or pay the sum of one dollar per day to any road overseer, who shall receipt for the same and expend it in repairs on the public roads within his district or ward  *   *   .* "

Section 6092 of said statute reads as follows:

"Whenever it shall appear in consequence of sickness or absence from home, or from any other cause that the road work aforesaid shall not be performed within the time specified in this act, or when the township board shall deem such work unnecessary, the overseer is hereby authorized to require the performance of such work at any time prior to the tenth day of November then next ensuing, and in case any person shall neglect or refuse to do four days work, or furnish a substitute, or pay the sum of one dollar per day, or plant the trees as provided by this act, or if any person shall appear at the proper time and place as directed by the overseer and neglect or refuse to do a reasonable day's work according to his ability, the road overseer shall certify all such delinquent road taxes to the county clerk, who shall place the same on the tax roll for collection, subject to the same penalties and to be collected in like manner as other taxes are by law collected, and the same when collected shall be paid to the road district from which collected, and- be expended in improving the roads and highways therein."

The only defense made by the accused in the court below is stated in his motion to dismiss, in which he alleges that: For the reason that the prosecution against him was not commenced within 10 days from the expiration of the time limited in the notice re-

quiring the accused to comply with the provisions of section 6090 of the Statutes of this state, the action is barred by said limitation, and therefore he could not be successfully prosecuted. It is therefore fair to assume that the accused was in all respects liable under said section 6090 for the performance of said labor or the furnishing of a substitute, or the payment of $1 per day as therein provided.

The first question, therefore, presented for our consideration is the proposition raised by said motion upon which the accused was discharged; the accused relying on that part of section 6109, which reads as follows:

"Provided, that it shall be the duty of the road overseer to file a complaint before some justice of the peace of his township against such person so refusing or failing to comply with such notice within ten days after such failure or refusal. And any road overseer failing to file such complaint shall be guilty of a misdemeanor and punished as in this section provided for the person so refusing * * *"

In order to arrive at an intelligent conclusion upon this proposition, it is necessary to carefully consider section 6092, above quoted, together with section 6090. It will be observed that section 6092 expressly provides that if a person liable for the performance of the work provided to be done under section 6090 fails to either perform the work, furnish a substitute, or pay the $1 per day after being notified as the law requires, he can be prosecuted criminally under section 6109, or the tax may be collected under the provisions of section 6092 the same as other taxes, if the same is properly certified by the overseer to the county clerk. Reading all these sections together, this court is of the opinion that the provision of section 6109, which provides for the filing of the complaint by the overseer within 10 days after the person liable has failed to perform said work, furnish a substitute, or pay the $1 per day, does not extinguish the right of a criminal prosecution within the statute of limitation applying to misdemeanors generally; that the purpose of said provision of the stat-

2 Cr.—27

ute was twofold: First, to compel vigilance on the part of the overseer; and, secondly, to make the overseer liable for failing to file such complaint and applying the same penalty to the overseer that applied to the person liable under said section; and that the failure of the overseer to do this duty within the time specified in said section would not inure to the benefit of the accused and render him free from liability or punishment; that the provisions of said section are directory merely.

One of the tests laid down by eminent law-writers in determining whether a statute is directory or mandatory is the presence or absence of negative words plainly importing that the act should be done in a particular manner or time and not otherwise. Lord Mansfield would have the question, whether the statute was mandatory or not, depend upon whether that which was directed to be done was or was not of the essence of the thing required. The Supreme Court of New York, in the case of *People v. Cook,* 14 Barb. 290, declared the rule to be that:

"Statutes directing the mode of proceeding by public officers are directory, and are not regarded as essential to the validity of the proceedings themselves, unless it be so declared in the statute."

Furthermore, there is nothing in the language of the statute in question that would limit the time in which the state could file a complaint. It can also be contended with logic and force that the 10-day limitation and statute under consideration had the further purpose in view of making the overseer liable as well as the person originally liable. We think it cannot be claimed with much degree of reason to support it that, in the event the overseer failed to do his duty within the 10 days prescribed by said statute, the remedy secured under this statute to the road district would utterly fail. On the contrary, it is the opinion of this court that a criminal prosecution under this section would not be barred, except by the general statute of limitation applying to misdemeanors, because the statute in express words makes the offense charged against the accused in this case a misdemeanor. Another rule of law which we think applies is this: That, this

being a remedial statute, it should be liberally construed, and that such interpretation would promote the ends of justice and further the design of the Legislature in enacting it. And, further, that, while the statute under consideration provides that it is the duty of the road overseer to file the complaint within 10 days, it does not provide that, if he failed to file the complaint within the 10 days, the remedy intended to be provided by the statute should thereby fail.

This brings us to the proposition raised by the brief of the Assistant Attorney General, which calls attention to section 284 of Bunn's Constitution of Oklahoma, which reads as follows:

"The Legislature may authorize the levy and collection of a poll tax on all electors of this state, under sixty years of age, not exceeding two dollars per capita, per annum, and may provide a penalty for the nonpayment thereof."

In this connection it must be remembered that the laws in force in the territory of Oklahoma prior to the adoption of the Constitution of this state are only in force in this state, if at all, by reason of the provisions of section 2 of the Schedule of Snyder's Constitution, p. 381, which reads as follows:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

It will be noted, therefore, that the provisions of said section 2 of the Schedule, just quoted, only extended and put in force such laws in the territory of Oklahoma at the admission of the state into the Union as were not repugnant to any of the provisions of the Constitution of this state. It therefore becomes important to determine whether or not the provisions of section 6090, requiring that all male persons between 21 and 50 years of age in this state who are capable of performing labor on public highways, and who are not a township or county charge, shall be liable each year to perform four days' work of eight hours each on the

public roads, constitutes a poll tax; and, if so, said section 6090 is in contravention of and repugnant to the provisions of section 284 of Bunn's Constitution of Oklahoma, which provides that the Legislature may authorize the levy and collection of a poll tax on electors of this state under 60 years of age not exceeding $2 per annum.

It will be agreed that, if said provisions of section 6090 is a poll tax, then the requirement of the payment of $4 per year would be repugnant to the provisions of the Constitution just referred to. We have carefully examined the authorities on this subject, and we find many instructive cases.

In *Short v. State of Maryland*, 80 Md. 392, 31 Atl. 322, 29 L. R. A. 404, in an opinion delivered by Chief Justice Robinson, this question is ably and thoroughly discussed. This was a case in which the state of Maryland prosecuted Short for violating the statute imposing compulsory labor upon persons residing in the several election districts of the county for the purpose of keeping the roads in repair; which also provided for a substitute, or the payment of a stipulated sum in lieu of such personal services. Therefore, the prosecution was founded upon practically the same statute as section 6090 of 'Wilson's Revised and Annotated Statutes of this state. The plaintiff in error in this case insisted that because the statute sought to enforce a poll tax, the collection of the poll tax is in violation of the fortieth section of the third article of the Constitution of the state of Maryland, and therefore the Legislature had no such power; that said act also violates section 15 of the Declaration of Rights of said state, and is repugnant to the thirteenth and fourteenth amendments to the Constitution of the United States. Counsel for the state in said case, among other things, contend that the legislation complained of by the accused is a familiar mode of providing for the repairing of public roads, and that the state had the right to call upon its people, either to render services themselves for such purpose, or to furnish substitute, or to pay in money an equivalent to such services; and the corresponding duty of such citizen to respond to such call was

universally treated as standing upon the same footing as compulsory militia service by persons between specified ages, and compulsory jury service, also by designated persons. It was also contended that this system of compulsory service was almost as old as the common law itself; it appearing that as early as 1550 the care of the public roads of England was first left to the male inhabitants of parishes, citing 1 Blackstone, Commentaries, 538, which reads:

"Every parish is bound of common right to keep the highroads that go through it in good and sufficient repair, unless, by reason of the tenure of lands, or otherwise, this care is consigned to some particular private person. From this burden no man was exempt by our ancient laws, whatever other immunities he might enjoy; this being a part of the *trinoda necessitas,* to which every man's estate was subject."

The learned justice, in discussing this case, said:

"By the Public Local Laws of Dorchester county all ablebodied residents of the county above twenty and under fifty years of age are compelled to labor two days at least in every year in repairing the roads of said county, with the privilege, however, of furnishing a substitute, or paying to the road supervisors seventy-five cents for each day such person may be summoned to labor, the money thus paid to be expended in repairing the roads. And it further provides that any one neglecting or refusing to perform such labor, or to provide a substitute, or to pay seventy-five cents per day for each and every day he may be summoned to work, shall be guilty of a misdemeanor, and upon trial and conviction before a justice of the peace shall be fined seventy-five cents for each day's delinquency and costs, and shall stand committed until the fine and costs are paid. The main question, and the only one, it seems to us, about which there can be any real contention, is whether this local law is in conflict with the Constitution, which declares 'that the levying of taxes by the poll is grievous and oppressive, and ought to be prohibited. Article 15, Declaration of Rights, Const. 1867. And, in construing the meaning of this article, we must bear in mind that the same declaration is to be found in the Constitution of 1776, and in every Constitution adopted in this state down to the Constitution of 1867. So the question comes to this: Is compulsory labor imposed upon per-

sons residing in the several election districts of a county for the purpose of keeping the roads in repair, with the privilege of providing a substitute, or the payment of a stipulated sum in lieu of such personal service a levying of taxes by the poll?' within the meaning of the Constitution."

This learned justice, after citing many cases in support of the final conclusion of the court, holds: That the provision of said statute requiring certain compulsory labor upon the public highways was not a poll tax and not in contravention of either the Bill of Rights or the Constitution of the state of Maryland, and not repugnant to the Constitution of the United States; and affirmed the judgment of the lower court imposing a sentence upon the accused for violating the provisions of said statute, and declaring the law in Maryland to be as follows:

"The term 'poll tax' within the meaning of the Constitutional provision prohibiting poll tax, does not include compulsory labor imposed by statute upon persons residing in the several election districts of a county for the purpose of keeping the roads in repair, and therefore such statute is constitutional."

In *Leedy v. Incorporated Town of Bourbon,* 12 Ind. App. 486, 40 N. E. 640, the Appellate Court of Indiana held:

"The liability to work on highways, imposed by Burns' Ann. St. 1894, § 6819, on all able-bodied male citizens between the ages of 21 and 50 years, is not in the nature of a poll tax, but of the nature of the military or jury service."

In *Dennis v. Simon,* 51 Ohio St. 233, 36 N. E. 832, it is held:

"Section 4717 of the Revised Statutes, which provides that certain persons therein named shall be liable annually to perform two days' labor on the highways, under the direction of the road supervisor of the road district in which any such person resides, is not in conflict with the Constitution of Ohio, and is a valid enactment. That section does not, in our opinion, infringe the article and section of the Constitution by which the General Assembly is forbidden to levy a poll tax for county or state purposes; nor is it in violation of the section of the Bill of Rights which provides that there shall be no involuntary servitude in this state."

The Supreme Court of Illinois has also spoken on this subject, in *Herman Fox v. City of Rockford;* 38 Ill. 451:

(First Syllabus) "An assessment of road labor is not a capitation tax; therefore the Legislature may authorize a city to make such an assessment upon all persons above the age of twenty-one years without violating section 1 of article 9 of the Constitution, which exempts persons over sixty years of age from the payment of the capitation tax."

(Third Syllabus) "The general law of the state authorizing counties and townships to impose the burden of road labor only on persons between twenty-one and fifty years of age cannot operate as a limitation upon an express power given to a city by special charter to impose such burden upon all persons over twenty-one years of age."

This question was again decided by the Supreme Court of the state of Ohio, but based upon a different state of facts, in the case of *William Houston and Daniel W. Cline v. Silas H. Wright,* 15 Ohio St. 318. This case was based upon a statute of the state of Ohio providing for the organization and disciplining of the militia of that state, and which provides that all persons subject to military duty and who are not members of some voluntary organization shall either become members of some voluntary organization, or shall pay into the county treasury annually the sum of $4, which sum shall be in commutation for fines and penalties for neglect to perform military service, etc. Chief Justice Brinkerhoff, in delivering the opinion of the court, says:

"The first section of the twelfth article of the Constitution provides that 'the levying of taxes by the poll is grievous and oppressive; therefore, the General Assembly shall never levy a poll tax for county or state purposes.' The first section of the ninth article provides that 'all white male citizens of this state, being eighteen years of age and under the age of forty-five years, shall be enrolled in the militia and perform military duty in such manner, not incompatible with the Constitution and laws of the United States, as may be prescribed by law.' The fourth section prescribes that 'all persons who are subject to military duty under the provisions of this act, and are not now members of some volunteer organization, shall either become members of some volunteer or-

ganization, or shall pay into the county treasury annually, the sum of four dollars, which sum shall be a commutation for fines and penalties for neglect to perform military service. * * *' We are of the opinion that the commutation money named in the fourth section of the act is not in any sense, a tax. The primary requirement of that section is personal military service in a voluntary organization."

Several other states have held in harmony with the cases herein cited. Several states have, however, decided differently. For instance, in the case of *Hassett v. Walls*, found in 9 Nev. 387. In this state the law was enacted requiring the payment of a road tax annually, or two days' labor in lieu thereof. The court held the levy of service upon an individual for road purposes as an emanation from the taxing power, and that the road tax of $4 annually, or two days' labor imposed upon individuals by the highway act, whether regarded as a levy in money or service, is a capitation tax, or poll tax. Chief Justice Whitman, in discussing the propositions involved in this case, prefaces his statement, and, by way of introduction, says in substance, that by the general revenue law of said state an annual poll tax of $4 is levied upon each ablebodied male resident of any road district of that state from 21 and under 60 years of age. Thus he assumes in the beginning of his discussion that it is a poll tax. Having decided that it is a poll tax, the court's conclusion that the law under consideration is unconstitutional and void was to be expected. This learned judge, however, in referring to the Illinois statute, which is identical with the statute in this state upon this subject, says:

"But a contrary rule, as before indicated, appears so clearly correct that these authorities will not be followed. Where the law of this state like that of Illinois, which requires labor and allows it to be commuted into money, while Nevada levies a money tax but allows commutation in labor, the conclusions would be the same. Either is, and both are, capitation or poll taxes; one in money, the other in service, but both in excess of the limitation imposed by the Legislature; if in money, both in amount and in the disposition made of the proceeds; if in service, because no other poll tax than the one prescribed by the Constitution may lawfully

be levied. The indication of this one has excluded from legislative power any other."

In Illinois, road, military, and jury duty are placed upon the same plane, and it is held that neither is in the nature of a poll tax; citing *Sawyer v. City of Alton,* 3 Scam. (Ill.) 127; *Town of Pleasant v. Kost,* 29 Ill. 490; *Fox v. City of Rockford,* 38 Ill. 451.

In Virginia, in *Proffit v. Anderson, Deputy Sheriff,* 20 S. E. 887, the Supreme Court held in a *habeas corpus* case as follows:

"The road law for Louisa county, requiring all able-bodied men between 16 and 60 years old to work the roads two days in each year, and conferring authority on the overseer of roads to impose a fine upon persons refusing so to work, and to collect it by levy as in case of taxes, and providing for the imprisonment of one so refusing, is void under article 10, § 5, of the Constitution which authorizes the General Assembly to assess a capitation tax not exceeding $1 per annum on every male citizen over 21 years old, to be dedicated to the public schools, and confers on counties and corporations the power to impose a capitation tax, not exceeding 50 cents for all purposes."

To this holding Justices Lewis and Lacy dissented. A careful reading of this case shows that the *habeas corpus* was granted, not upon the theory that, because the statute under which Proffit was prosecuted provided a poll tax, it was therefore unconstitutional, but on the ground that the Constitution of Virginia authorized the General Assembly to assess the capitation tax not exceeding $1 per annum on every male citizen over 21 years, the money to be applied exclusively in aid of public free schools, and limited the power of counties and corporations to impose a capitation tax not exceeding 50 cents per annum for all purposes; the court holding in this case that the burden imposed on the accused was nothing less than a requisition tax, and, being in excess of the capitation prescribed by the said fifth section of article 10 of the Constitution of Virginia, is unconstitutional and void. The only case cited in the opinion is *People v. Mayor of Brooklyn,* 4 N. Y. 419, 55 Am. Dec. 266. A careful reading of the last- cited case

discloses that the principal question discussed by Justice Ruggles, and the principal point in the decision, is the drawing of a distinctive line between taxation for public improvement, and levying an assessment on the property to be benefited by the improvement, and the taking of private property for public use under the rights of eminent domain. In other words, this case points out the distinction between the right of taxing an individual as his share of the public burden for which the taxpayer is supposed to receive just compensation in the benefits conferred by government, and the right to take private property for public use, making the distinction between taxes assessed against his property and the taking of the individual's property under the rights of eminent domain. Therefore, we fail to see wherein this case supports the doctrine declared in the Proffit Case.

After carefully examining all the authorities we could find which in any way shed light upon the question involved in the case at bar, and without expressing our opinion on the justness of the provisions of section 6090, *supra*, we find that the overpowering weight of authority holds in favor of the proposition that the provisions of said section do not constitute a poll tax, and that the provisions of said statute rest upon the same principle that military and jury duty rests; and that the right to impose such burden is justified on the further theory that it is compensated for in the advantages derived from both the benefits of government and the benefits directly or indirectly from the proper application of either the service or the money paid in lieu thereof.

In this state the provisions of section 6090 can more properly be denominated a tax, for the reason that it is provided in section 6092 that, if the person liable to perform the labor, furnish a substitute, or pay in lieu thereof the sum of $4 fails to do so, upon proper certificate of that fact by the road overseer to the clerk of the county in which the road district interested is located, this burden or tax is placed upon the tax rolls against such person, and may be collected the same as other taxes.

This court may entertain an entirely different impression of the wisdom of this law than did the Legislature that enacted it, but that has nothing to do with the decision of the question under consideration. If the law is an unjust and unwise one, the remedy should be sought in the legislative department of the state, and not from the judiciary. The duty of this court is to decide and determine questions brought before it upon the law as it is written, regardless of the court's opinion as to the wisdom or righteousness of the law under consideration.

This court is of the opinion that the county court committed error in this case in sustaining the motion of the accused on the ground that the 10-day limitation contained in section 6109 is mandatory, and that a noncompliance therewith absolved the accused from prosecution; and it is the opinion of this court that such provision is merely directory, and does not destroy the right to prosecute the offender within the time limited by the statutes of this state applying to misdemeanor cases. Sections 6090, 6092, and 6109 of Wilson's Revised & Annotated Statutes of 1903 of this state are therefore in full force.

For the reasons stated, this cause is reversed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.